## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JANA M. PENA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 11-0109 |
| | * | |
| WAFFLE HOUSE, | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### JURISDICTION

1.      Plaintiff files this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), alleging sex harassment in employment and retaliation. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(4).  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

### PARTIES

2.      Plaintiff, Jana Pena is an adult female citizen of Foley, Baldwin County, Alabama and was at all times relevant to this action employed by Waffle House in Baldwin County, Alabama.

1

3.     Defendant, Waffle House, is a corporation located and conducting business in Baldwin County, Alabama.  Waffle House is an employer within the meaning of 42 U.S.C. Section 2000e(b), in that it is engaged in an industry affecting commerce that employs fifteen or more persons.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.     Prior to filing this civil action, Plaintiff timely filed written charges asserting sexual harassment with the Equal Employment Opportunity Commission.

5.     On or about December 6, 2010, the EEOC issued Plaintiff a notice of Right to Sue which is attached hereto as Exhibit "A."

6.     Plaintiff has exhausted and satisfied all administrative remedies and prerequisites to filing this action.

## FACTUAL ALLEGATIONS

7.     On or about April, 2008, Plaintiff interviewed with Marilyn Silcox (Silcox), the Regional Human Resource Officer, at Waffle house for a position with the company.

8.     Silcox discussed hiring Plaintiff for a management position which was rejected by Plaintiff due to her unfamiliarity with Waffle House and it's practices.  Silcox continued to discuss with Plaintiff the possibility of joining the

2

management of the company until such time Plaintiff filed complaints of sexual harassment in September, 2008.

9.     Plaintiff began training with Waffle House in May, 2008.  Plaintiff was assigned to work in the Foley facility during training.

10.     On or about May, 2008, Plaintiff began employment with Defendant Waffle House as a Waitress at the Fairhope, Alabama facility.  At all times relevant to this action, Plaintiff remained in said position and satisfactorily performed the duties of her job.

11.     Lynn Barnett, as Plaintiff's direct supervisor, had the authority to affect Plaintiff's terms and conditions of employment.

12.     Phillip England, as the District Manager, had the authority to affect Plaintiff's terms and conditions of employment.

13.     On or about May, 2008, Tyree Padgett, a Cook, began to harass Plaintiff including, but not limited to, making inappropriate comments to and about Plaintiff's intimate body parts.

14.     From June through September, 2008, Padgett's comments became more frequent and pervasive. Padgett began to proposition Plaintiff, make sexually inappropriate gestures towards her, touch her intimate body parts, and rub his intimate body parts against Plaintiff in a manner that was offensive and egregious.

Padgett continued to proposition Plaintiff, comment on Plaintiff's intimate body parts, make sexual gestures, and say sexually inappropriate comments to Plaintiff.

15.    In July, 2008, Padgett attempted to push Plaintiff into the boys bathroom and began to show Plaintiff pornographic photos.

16.    The sexually offensive conduct of Padgett towards Plaintiff and other female employees was open and obvious.

17.    Barnett, the store Manager, observed the sexually hostile and offensive conduct of Padgett directed at Plaintiff and others and was aware that the conduct was unwelcome.

18.    Barnett heard Plaintiff yell at Padgett to "stop touching [her]" and, also, her pleas for Padgett to stop saying "nasty things to [her]."

19.    Barnett failed and/or refused to take corrective action to stop the sexually harassing conduct of Padgett towards Plaintiff and other female employees.

20.    The conduct of Padgett became increasingly more frequent and severe.

21.    In August, 2008, Padgett, again, attempted to push Plaintiff into the bathroom.

22.    In August, 2008, Plaintiff told Padgett, in the presence of Barnett, the

4

Store Manager, that she wanted Padgett to "stop touching [her]" and to "leave [her] alone." Plaintiff then notified Barnett, the Store Manager and her direct supervisor, that she was "sick of [Padgett] saying nasty things to [her]," "touching [her]," and "trying to hug [her]." Barnett's only response was, "Well, you don't have to let him hug you."

23.    Barnett took no action to stop the sexual harassment and/or inappropriate conduct towards Plaintiff despite Plaintiff's request for assistance.

24.    Barnett did not report Pena's complaint of sexual harassment in August, 2008 as required under Waffle House's Policies and Procedures.

25.    Barnett did not advise Plaintiff that she needed to report her complaint to a "hotline" or some other division of Waffle House.

26.    On September 9, 2008, one week after Barnett received Plaintiff's complaint of sexual harassment against Padgett, Plaintiff was directed to work at a facility located in Daphne, Alabama. The Daphne store was a further distance from Plaintiff's home. Plaintiff reported to work, but was not allowed to work a full shift. Plaintiff received less income and/or tips as a result of the reassignment.

27.    While working in Daphne, Plaintiff attempted to discuss her sexual harassment complaint with Phillip England, the District Manager. England advised Plaintiff that he could not discuss her complaints with her.

5

28.    England failed and/or refused to report Plaintiff's complaints of
sexual harassment as required by Waffle House's Policies and Procedures.

29.    England failed to advise Plaintiff that she should report the
harassment to the "hotline" and/or some other division of the company.

30.    On or about September 12, 2008, Plaintiff was notified that she had
been reassigned to work at the Fairhope facility. Plaintiff reported to work in
Fairhope and was immediately advised by Barnett that there was no work and
directed to leave.

31.    When Plaintiff reported to work on September 12, 2010, Padgett
immediately began to sexually harass her by saying sexually inappropriate
comments, trying to hug her, and trying to pull her on his lap.

32.    The actions of Padgett were offensive and created a hostile working
environment for Plaintiff and other female employees. The inappropriate sexual
conduct of Padgett continued until his termination.

33.    The inappropriate actions of Padgett were open and blatant and were
witnessed by co-workers and supervisors at Plaintiff's work station.  As such,
Defendant Waffle House was on constructive notice of the sexually hostile
working environment.

34.    The actions of Padgett affected the terms and conditions of Plaintiff's

6

employment with Waffle House and inhibited her ability to adequately perform her job duties and responsibilities.

35.   Plaintiff was aware that employees were advised to contact a "hotline" if they believed they had been harassed.  Plaintiff was unable to locate the number for the "hotline".

36.   Waffle House did not post the "hotline" number at the Fairhope facility.

37.   On or about September 10, 2008, Plaintiff contacted Marilyn Silcox, the Regional Human Resource Officer, and complained that she had been sexually harassed by Padgett.  Plaintiff requested the "hotline" number and advised Silcox that she intended to report the sexual harassment.  Silcox advised Plaintiff that she would handle the complaint and that Plaintiff did not need to call the hotline number.  Silcox did not provide Plaintiff with the hotline number.

38.   Silcox failed and/or refused to report the sexual harassment complaint of Plaintiff as required by Waffle House's policies and procedures.

39.   Silcox failed and/or refused to take corrective action to stop the harassment of Padgett towards Plaintiff.

40.   On or about September 14, 2008, Plaintiff inquired with Barnett, Store Manager and Plaintiff's direct supervisor, if she had been contacted by

Silcox.  Plaintiff informed Barnett that she had reported sexual harassment to Silcox, the Regional Human Resource Officer,  and understood that Waffle House would be conducting an investigation.  Barnett became very angry and told Plaintiff that she had "forced her" to call the "hotline".  Barnett stated, "You don't tell anyone anything about me . . . we will have to call the 800 number . . ." Barnett dialed the 800 number for the hotline on her phone and, in a angry manner, handed Plaintiff her phone to report the conduct.

41.    On September 14, 2008, Plaintiff  reported that she had been sexually harassed by Padgett on the "hotline" number.

42.    On or about September 15, 2008, Plaintiff was contacted by a Relief Manager, Chester, and advised that her name had been removed from the work schedule by Barnett.  Plaintiff's hours and pay were substantially reduced affecting her wages and tips.

43.    On or about September 17, 2008, Plaintiff contacted Silcox, the Regional Human Resource Officer, and complained that her name had been removed from the work schedule in retaliation for her complaints of sexual harassment.

44.    On or about September 17, 2008, Plaintiff called the "hotline" number and reported that she had been retaliated against for her complaints of

sexual harassment.  Plaintiff advised the hotline attendant that her hours had been cut by her Store Manager.

45.    On or about September 18, 2008, Plaintiff provided notice to England, the District Manager, that Barnett had retaliated against her and that her name had been removed from the work schedule.  England reassigned Plaintiff to work as an extra at various facilities in Daphne, Robertsdale, and Loxley, Alabama, but Plaintiff was required to call daily if she was to receive a work assignment.  Plaintiff was never allowed to work a full schedule and had substantial cuts to her wages and/or tips as a result of the reassignment and modifications to her work schedule.

46.    On or about October 5, 2008, Plaintiff notified Stephanie Peacock, an Investigator assigned to investigate her complaints of sexual harassment, that she believed she had been retaliated against for her reports of the discriminatory conduct.

47.    On or about October 21, 2008, Plaintiff again provided notice to England, District Manager, that Barnett had retaliated against her and had substantially cut her work hours and wages.

48.    England failed and/or refused to report the discriminatory conduct as required by Waffle House policies and procedures.

49.    England failed and/or refused to correct the retaliatory and

discriminatory conduct directed at Pena.

50.    On or about November, 2008, Plaintiff was reassigned to work at the Fairhope facility.  Plaintiff continued to work a modified schedule until her constructive discharge on September, 2009, resulting in lost wages and/or tips.

51.    No action was taken by Waffle House to stop the sexual harassment by Padgett and/or create an environment that was not hostile and/or discriminatory until Padgett was terminated.

52.    Waffle House failed and/or refused to stop the discriminatory and/or retaliatory conduct toward Plaintiff or to create an environment that was not hostile and/or discriminatory.

53.    The policies and procedures of Waffle House to prevent and/or correct sexual harassment and/or retaliation were ineffective.

54.    Upon information and belief, Waffle House had constructive notice of the actions of Padgett and/or had received complaints from employees regarding the offensive and sexually offensive conduct of Padgett.  Waffle House took no action to stop the sexual harassment by Padgett or to create an environment that was not hostile and/or discriminatory.

55.    Upon information and belief, Defendant Waffle House had ineffective and inadequate policies and procedures for training its employees and managerial employees in a manner as to avoid the type of conduct alleged herein.  In

particular, upon information and belief, Defendant Waffle House provided

insufficient training or direction to its employees and/or managers in matters of

sex harassment and/or retaliation.

56.     The conduct alleged herein created an intolerable condition and work

environment under which the employees worked or attempted to work.

57.     As a result of the hostile working environment and/or intolerable

working conditions at Waffle House, Plaintiff has suffered extreme emotional

distress, frustration, anger, and emotional pain.

58.     Plaintiff has incurred compensatory damages including lost wages.

## COUNT ONE
## Sex Harassment in Violation of Title VII

59.     Plaintiff reavers and realleges the foregoing paragraphs as though

fully set out herein.

60.     Plaintiff was subjected to a hostile, offensive and abusive working

environment as a result of her gender, female.  Based upon the pervasive nature of

the hostile environment, Defendant Waffle House knew or should have known of

the hostile work environment.

61.     The Plaintiff found the harassment to be humiliating, offensive, unfair

and in violation of her rights under Title VII.

62.     Plaintiff reported the sexual harassment to management of Waffle

House including, but not limited to, Lynn Barnett, her direct supervisor and Store

Manager, Philip England, the Regional Manager, and Marilyn Silcox, the Regional

Human Resource Officer, without effective action by Waffle House.

63.    Plaintiff has suffered compensatory damages as a result of the

harassment including lost wages and income.

64.    Plaintiff has suffered frustration, anxiety, humiliation and emotional

distress as a result of the sexual harassment.

65.    Defendant Waffle House knew or should have known that their

conduct violated clearly established Federal law.

66.    The Defendants' conduct was done with reckless indifference to the

Plaintiff's federally protected rights and Waffle House failed to make good faith

efforts to comply with Title VII.

### COUNT TWO
### Retaliation in Violation of Title VII

67.    Plaintiff reavers and realleges the foregoing paragraphs as though

fully set forth herein.

68.    Plaintiff first reported sexual harassment to her direct supervisor in

August, 2008.

69.    On September 9, 2008, one week after Plaintiff reported complaints

of sexual harassment to her supervisor, Barnett, Plaintiff was temporarily

reassigned to work at another facility in Daphne, Alabama.

70.    Plaintiff filed additional complaints of sexual harassment with Silcox, Regional Human Resource Officer, and England, District Manager.

71.    On September 14, 2008, Plaintiff again notified her direct supervisor, Barnett, of complaints of sexual harassment.  Plaintiff, at Barnett's direction, called the company "hotline" and, again, reported complaints of sexual harassment.

72.    On or about September 15, Plaintiff was advised that her name had been removed from the work schedule.

73.    Plaintiff notified Silcox, Regional Human Resource Officer, England, District Manager, and contacted the "hotline" to complain of retaliation.

74.    On or about September 20, 2008, England reassigned Plaintiff to work at various facilities as an extra in Loxley, Robertsdale and Daphne as an extra.  Plaintiff was frequently sent home prior to working a full shift reducing her work hours and income.

75.    Plaintiff continued to suffer adverse employment action against her as a direct and result of her complaints of discrimination until her constructive discharge in 2009.

76.    Plaintiff opposed employment practices she reasonably believed to be discriminatory and in violation of Title VII.

77.    On or about September 8, 2010, the EEOC issued a "For Cause" finding against Waffle House for both sexual harassment and retaliation.

78.    On or about December 6, 2010, the EEOC issued Plaintiff a Notice of Right to Sue.

79.    Defendant has treated Plaintiff in an adverse manner.

80.    The Plaintiff's opposition and/or participation in these matters was a motivating factor in the Defendant's decision to treat her hostilely; to reduce her work hours, and to transfer her work site, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a).

81.    As a result of the Defendants' conduct, Plaintiff has suffered a loss of income as well as frustration, anxiety, anger and emotional distress and other compensatory damages.

82.    Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights.  Defendants failed to make good faith efforts to comply with Title VII.

### COUNT THREE
### Assault and Battery

83.    Plaintiff reavers and realleges the foregoing paragraphs as though fully set forth herein.

84.    Padgett committed several assaults and batteries upon the Plaintiff by

14

touching or attempting to touch her person in a rude, offensive, lewd and abusive manner. These assaults and batteries were accompanied by circumstances of ill motive and aggression.

85.     As a proximate consequence thereof, the Plaintiff was caused to suffer damages as enumerated herein.

86.     Defendant, by itself and through its agents, employees, officials and supervisors knew or should have known of the harmful and offensive propensities of Padgett. Defendant has assumed responsibility for Padgett's conduct and ratified his wrongful conduct toward the Plaintiff.

87.     Plaintiff claims punitive damages from Defendant because of the willful and malicious nature of their conduct.

WHEREFORE, premises considered, the Plaintiff demands judgement against the Defendant in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, the Plaintiff demands judgement against the Defendants as follows:

A.     Grant Plaintiff a declaratory judgment against Waffle House that its actions, policies and practices complained of violated Title VII of the Civil Rights

Act of 1964;

B.     Grant Plaintiff a money judgment representing lost wages and benefits, and all other sums of money compensating for lost income, and other employment benefits, together with interest on said amounts;

C.     Grant Plaintiff an order enjoining the Defendants, its agents, successors, employees, and attorneys and those acting in concert with them and at their discretion from engaging in practices that discriminate against Plaintiff;

D.     Award Plaintiff damages against Defendants in an amount the jury determines will compensate the Plaintiff for her losses and damages suffered, including emotional distress, in an amount the jury determines is adequate and/or nominal damages as may be appropriate;

E.     Award Plaintiff punitive damages against Defendant in an amount the jury determines is adequate to punish Defendant for it's wrongful conduct and to deter it from similar conduct in the future;

F.     Award Plaintiff costs and expenses in prosecuting this action, including an award of reasonable attorney's fees and expenses pursuant to Title VII and 42 U.S.C. Section 1988;

G.     Retain jurisdiction of this action following judgment for sufficient time to insure that Defendants comply with the law and decree which may be entered herein, and during such time to require Defendants to report such

information as is necessary to evaluate its compliance;

H.      Award such additional or alternative relief as may be just, proper, and

equitable.

## JURY DEMAND

Plaintiffs herein demand trial by jury of all issues in this action.

Respectfully submitted this 1st day of March, 2010.

**Stein and Pilcher, L.L.C.**
151 N. Bancroft Ave.
Post Office Box 602
Fairhope, AL 36533-0602
Telephone:  (251) 210-4557
Facsimile: (251) 432-7756
mpilcher@mobilebaylaw.com


By:      _____

Mary E. Pilcher
Attorney for Plaintiff


Cc:   Mr. William Wasden, Esq.
      Burr & Forman, LLP
      P. O. Box 2287
      Mobile, Alabama 36652
      bwasden@burr.com